We have a busy morning, but before we get to our cases, we have some family matters to attend to. President's family matters. I would like to make a motion, and after I make the motion, I will turn the proceedings over to Judge Chen, because otherwise I'm in a conflict situation, and Judge Chen will preside over the hopefully granting of the motion. I would like to move the admission of Grace St. Vincent, who is a member of the Bar and is in good standing with the highest courts of Delaware and Illinois. I have knowledge of her credentials, and I'm satisfied that she possesses the necessary qualifications. Now, I know that because Grace has been my law clerk for almost two years. She's done very fine work. She's a good writer. She's a good digger. She is quite expert in a variety of technologies and has been a strong contributor to my chambers and to the court. Beyond that, she has spread her wings for the benefit of the court. When I look in her office, I see baseball bats and soft drinks, and she's sort of, I don't want to say managed, but influential in the court's softball team. I don't know whether it's a winning team. I do know that many years ago, a famous sports writer said, when the great official scorer in the sky gets to write against your name, it matters not whether you won or lost, but how you played the game. And I know with Grace's participation, our team played the game well. In addition, she's been active in the Charles Rich Inn of Court, and that's an important function benefiting the bar and the court. So with that lengthy motion, I will turn it over to Judge Tan for disposition of my motion. Thank you, Judge Lurie. I'll now confer with my fellow panel member, Judge Stoll. I agree with the motion. Okay. I'm happy to grant this motion with the unanimous panel. I also have gotten to know Ms. St. Vincent, and she's also been a very helpful contributor to my chambers, and I know she'll be a very positive presence in our bar, and we're lucky to have her at our bar. So the motion is granted. Grace, will you step up and take the oath from the deputy? I say by hand, do you solemnly swear or affirm that you will comport yourself as attorney and counsel of this court uprightly and according to law, and that you will support the Constitution of the United States of America in reference to the law of the United States of America. Congratulations, Grace. We now have another motion, and I will ask Judge Stoll to make that motion. I move the admission of Andrea Lynn Sheik, who is a member of the bar and is in good standing with the highest courts of Virginia and the District of Columbia. I have knowledge of her credentials, and I'm satisfied that she possesses the necessary qualifications. I know this because Andrea has served as one of my first law clerks, and she has performed wonderfully in that role. She is hardworking, ethical, trustworthy, and well-spoken, and has demonstrated many talents, ranging from performing excellent detailed legal research to spinning creative puns that helped our chambers win the coveted La Posada Award. I know that she will be an outstanding member of the bar. And with that, I turn it over to Judge Lurie. Judge Chen, how say we? I move to grant. The motion is granted. Please step up, Ms. Sheik, and take the oath. Please raise your right hand. Do you solemnly swear or affirm that you will comport yourself as attorney and counsel of this court uprightly and according to law, and that you will support the Constitution of the United States of America and the Constitution of the United States of America and the Constitution of the United States of America and the Constitution of the United States of America and the Constitution of the United States of America Congratulations, and welcome to the bar. Let us proceed with the official work of the morning. We have seven cases that are going to be handled, as I think all of the participants are aware of. We'll have three cases argued separately, and then four cases consolidated. The first case, and we'll also have the PTO participating for five minutes as an intervener. The first case is BE Technology v. Google, 2015-18-27. Was it Freitas or Freitas? Is it Freitas or Freitas? Freitas, Your Honor. May it please the Court. The first issue that we'd like to raise addresses the basic error that the Board made in construing the unique identifier limitation. Rather than look to and account for all of the relevant language in the claim, the Board only looked at part of it. And in doing so, the Board left out something important that changes the meaning. The Board's construction of the unique identifier limitation requires only that, this is on page A9 of the appendix, page 9 of the written decision, that the unique identifier identifies any information sent over the computer network. Well, the Board's construction doesn't account for the actual claim language. It doesn't even say that the identifier must uniquely identify information. There are three requirements about the information that must be met. The unique identifier must uniquely identify information, and everyone agrees about that. At times, we were criticized as if we had said the identifier must identify the computer. That wasn't our point. It is information that is identified, but that information is information sent over said computer network, sent from the computer, and sent to said server. The part that the Board left out is sent from the computer. The identifier must uniquely identify the information that is, among other things, sent from the computer, and the Board didn't address that. As a matter of fact, on page 8 of the final written decision, the Board said claim 11 further only requires that the unique identifier identifies information that is sent over the computer network. It left out the rest of it. Now, what Google had done in its construction is Google had said... Can I ask you a question? Why does that have to be part of the claim construction when it's right in the claim itself? It says specifically, uniquely identifies information sent over said computer network from said computer, or the computer, so why do you have to read that into the words unique identifier? Excuse me, Your Honor. That's a step along the way toward addressing whether the Logan reference meets the limitation and thus anticipates. Whether that language is written into the construction or just considered without construction, the Logan account number doesn't meet the limitation because all it does is identify information about the user. It has no capability to identify the information sent from the computer, and we've explained in our brief why that's so. Multiple users with different account numbers can use the computer, and the Logan user can use different computers. So regardless of how it gets in there, Judge Stoll, the Logan account number doesn't meet the limitation. But the board focused only on the information and not on the requirement that it be sent from the computer. Now the argument has been made that it wasn't necessary to do that or that it was wrong to do that, but we submit that the board did not take account of all of the language of the claim by leaving out the reference to the computer network. I'm sorry, the computer. Now with respect to the Logan account number, it's clearly not a Claim 11 unique identifier. All agree, and the disclosure of Logan is quite clear, that the Logan account number is a user identifier, and it has no reference to the computer, the particular computer being used by the user. But it is identifying information coming from the computer, right? It does not uniquely do so, Your Honor, but yes it does. It does in the sense that the account number refers to a specific individual, and it does identify information as being about that user, but it doesn't tell you whether it comes from the computer. All you know is that it's information about a given user. But all it has to do is identify information coming from a computer. It doesn't have to identify the computer, right? It does not have to identify the computer, but the requirement, Your Honor, is that the identifier of Claim 11 uniquely identify information sent from the computer. If all we have is an identifier of a user, it isn't uniquely identifying what's sent from the computer. And Logan makes this clear with the possibility that two users with different account numbers could be using the same computer. Therefore, the account number of each doesn't uniquely identify what comes from the computer, and that's what the requirement is. Well, is that what the claim requires, or does it require some kind of association with the information as recited in the claim, not necessarily some association that's unique to the computer from where the information is coming from? Well, there are both requirements, Your Honor, but with respect to this limitation about the unique identifier, the clause says wherein the unique identifier uniquely identifies information sent over the network from the computer to said server. So it is a part of what the claim requires, that there be a unique identification of what's sent from the computer. Now, part of the discussion about this... So I guess you're saying if the claim didn't have that final clause, from the computer to said server, then you wouldn't be able to make the argument you're making? That's true, Your Honor. If it just said, you know, identifier uniquely identifies information sent over said computer network, then you would be stuck and you wouldn't be able to make the argument that the unique identifier has to be associated in particular with some computer? We wouldn't be, Your Honor, because that is the connection. That is the language on which we rely, yes. From the computer point. Right. I guess I'm trying to understand why that extra clause even makes a difference. When it just talks about information coming over a computer network, necessarily that's information that's coming from the client, the user, that's being transmitted to the server. Well, it isn't so clear, Your Honor, and this ties back to a couple of things. First of all, in column 17 in the 314 patent, there is a disclosure of multiple ways that the ID might be provided. There are two examples that show the ID clearly being provided in a way that would identify information sent from the computer. The reference is first to providing the identifier to the specific item of software on the client computer, and the second is providing a cookie, which also identifies the specific item of software. So the reason that that's important is that it takes us away from these user identifiers. As a matter of fact, in the Facebook case, there is a reference to the W3C proposal. And in the W3C proposal, there's a comparison of identifiers that are cookie-based and identifiers that are like the W3C proposal that identify the user. And W3C advocates that its way is better. But it clearly distinguishes between a cookie-based identifier, which ties the identifier to a particular machine, and that's what's mentioned in column 17 in the 314 patent. So it's two ways to do something similar. On the one hand, you have a user identifier, like you do in the Logan reference. On the other, as in column 17 and as criticized in W3C. What about Dependent Claim 16? Doesn't that talk about basically user IDs? It does. It does, clearly, Your Honor. But what's mentioned in Dependent Claim 16 is not inconsistent at all with what we're saying. It could be the case that individual users also have user IDs. And as we pointed out in our brief, it's not the case that the Claim 16 identifiers that are provided to the users, it's not the case that those are, or must be, the Claim 11 unique identifier that identifies information. So, yes, the claim is further limited, and it is indeed limited by reference to a user-specific identifier. What if, hypothetically, I view the usage of the term unique identifier in Claim 16 to be identical to the usage of the term unique identifier in Claim 11? Then you're in trouble. I don't think so, Your Honor. Okay, well, let's hear about that. Let me give it a try. It could be the case, as we argued in our brief, that a single identifier could both meet Claim 16 and meet Claim 11 as we see it. The example that we gave had a string. We did it. We used different words in different briefs. One, two, three, Maya. One, two, three, Alice. One, two, three, Philip. So in that case, that identifier, the full identifier, could uniquely identify an individual. At the same time, it could meet the limitation as we see it by uniquely identifying information sent from the computer by use of the one, two, three. So one, two, three, Alice, and one, two, three, Philip would meet both limitations. The one, two, three would refer to information sent from the computer, and then we would know it came from Alice or from Philip, and we'd meet the Claim 16 requirement of a user-specific identifier. You're into your rebuttal time. You can either save it or continue. I would like to save the rest of my time, Your Honor. Thank you. We will do that. Mr. Pincus. Thank you, Your Honor, and may it please the Court. Let me pick up with this question about unique identifier. I think, with all deference to my colleague, I think the problem here is focusing on what the unique identifier has to uniquely identify, and looking at the language of Claim 11, and this is on Column 22, line 59 to 62, it says, Said identifier uniquely identifies information sent over said computer network from the computer to said server. So I think what the identifier is identifying is the information. The rest of it is a description of how the information gets from one place to another, but I don't think that there's any basis for saying that identifier has to necessarily be tied to the computer in the language of the claim itself. And let me explain a couple of other reasons for that. Earlier in Claim 11, on line 47, one of the steps is acquiring demographic information about the user. And then later in the claim on line 66 and 67, it talks about demographic information associated with said unique identifier. So it's clear from the claim that the identifier can be about a user because we have demographic information about a user, and then the unique identifier associated with the demographic information, which necessarily has to be tied to a user. And then, as Judge Chen mentioned, I think this is further confirmed by the language in Claim 16, which talks about the same term, unique identifier, and associating it with user. And I think it's important to step back and remember that what the Claim Construction Board has adopted doesn't say only that the identifier can only identify the user. It just says it can identify the user in addition to the computer, and it seems as if that language in Claim 16 really confirms that point. And then turning to the specification language, my friend talked about the language in Column 17. Column 17, as we discussed in our brief, is replete with the term user ID and assigning a unique ID to the user. For example, Column 17, line 13, server assigns a unique ID to the user. And then later on, starting on line 29, lots of references to user ID. So my friend's construction of the claim would read out that embodiment that's in the specification. So for all of those reasons, we think there's very, very, very strong evidence to support the Board's determination that unique identifier can refer to either a computer or a user. And so the login does anticipate that, as my friend conceded, because it has a user-based identifier. Let me talk about a second issue that was raised, which is the question about where the unique identifier comes from. Another argument before the Board and raised again in the briefs is that the identifier has to be provided by the server. The Board rejected that construction and said any system, process, or entity providing a unique identifier to the computer is enough. Again, turning back to Claim 11, it doesn't say anything about where the unique identifier comes from. It just says on line 59, providing a unique identifier to the computer. Further down in that claim, at the top of Column 23, there is an identification. Transferring said content from said server to the computer, but that language saying where is the unique identifier coming from does not appear in the limitation that refers to the unique identifier. The principle reliance that, in their briefs, but the other side invoked, was a specification that does talk about some language about receiving an assigned ID from the server, but that's an attempt to import a limitation from the specification into the claim that just doesn't appear there. Your point is that they know how to say from said server in the claim. Exactly, Your Honor. If they want to say where it comes from, they can say it. They said it just a few lines down in the very same claim. They didn't say anything about where the identifier comes from in the slightly higher up language that refers to the identifier's role. Let me briefly touch on the third argument that's advanced by the other side, which is the argument that Logan does not anticipate selecting advertising for transfer in accordance with demographic information. Here, the argument is Logan doesn't select advertising content based on demographic information, but 3.14 does, therefore no anticipation. That's just an erroneous view of Logan. As the Board explained in detail, the targeted advertising discussion in the Logan specification appears on page A151 of the appendix, starting in column 24, which is headed Targeted Advertising, and it talks about two ways that the argument that the advertising is targeted. Do I understand correctly that what it is that it does is it selects and then it prioritizes? It selects and then it prioritizes. And maybe an argument that Logan only prioritizes and doesn't select. I think that is the argument on the other side, Your Honor, but I think it's a plain misreading of the sequence of the specification. The specification starts in the first lines in column 24. It talks about selection for insertion on line 14, and then it talks about the two factors that are used in selecting advertising. One is the interest match, which compares subject matter codes that are in the advertisement with subject matter codes associated with the user. And then, turning to column 25 on the next page, line 4, it says in addition to the interest match value determined above, weight may be given to the subscriber's personal characteristics. And then it talks about the demographic match process. So it clearly says in the selection process, two considerations, interest match and demographic match. And then on line 15, it turns from selection to prioritization and says, all advertisements scheduled for a given subscriber may then be prioritized based on the calculations that have been calculated in the interest match and the demographic match. So it clearly sets up a, as Your Honor said, selection based on two characteristics and then prioritization based on revisiting those values. And that's exactly what the Board determined in its review of this language on page 820 of its decision. The last question is claim 15, which relates to cookies. And here we rely on both Robinson as well as Logan. The question here is obviousness and whether there was a motivation to increase security by adding a cookie-based security here. And the Board found that there was. It talked about an increase in security being an advantage of combining those and that Robinson expressly discloses the interest in as much security as possible and therefore provided a rational basis for combining the references. My friends in their reply brief raised a new argument that wasn't raised in their opening brief about encryption and the advantages of encryption vis-a-vis cookies. Again, not an argument discussed at all in their opening brief, the claim that because the 314 has encryption, there would be no basis for adding cookies. But those two security measures, again, we have to reply now because it wasn't in their opening brief, are really directed at different things. Encryption is about security in the transmission of information. Cookies are a basis for not storing information centrally, but storing it in a dispersed manner on computers, so they actually address two different security issues. The last issue I'd raise is the motion to amend, obviously a very deferential standard in evaluating the Board's decision. Here, the written description support for the proposed amendment was a very long string cite that had lots of different citations, including citations to four full pages of the application, and the Board rejected it as insufficient. We think they were well within their authority to do that, based on the absence of any real direction in terms of what was pointed to, and because there is nothing in what's cited there to provide the requisite written description. The amendment talks about selecting advertising for transfer, new language in accordance with real-time and other computer usage information, and demographic information associated with said unique identifier. They point in their reply brief to a passage on page A-16-17, but that describes selection based solely on real-time information. It doesn't explain at all how the three factors would be brought to bear in making the selection. Unless the Court has any further questions? Just going back to Logan's account number, I understood Mr. Fraser's argument to be based in part on that final clause and that particular unique identifier limitation about the unique identifier has to get sent from the computer to the server, and Logan's account number doesn't do that. There's something about the phrase, from the computer to the server, that's important to appreciate the nature of what's going on with respect to understanding how the unique identifier is supposed to operate and what it represents. What do you have to say about that? I'm not sure what that argument means, I guess, for a couple of reasons. First of all, I think that clause is merely identifying the pathway of the information. It's not identifying something that the unique identifier itself has to be tied to. I think it's just saying, here's what the information we're talking about is the information that's being sent by the user has to come from the computer and up to the server, and that's what we want to be tied to this identifier. I don't think there's any basis there in saying that the identifier must be tied to the computer for the reasons I was discussing earlier. First of all, because a lot of the discussion of the identifier in that claim is tying it to the user's demographic information, which seems to clearly require an identifier or at least allow room for an identifier that's tied to the user. Second of all, Claim 16's use of the exact same phrase to refer to a user as opposed to a computer and the language in the specification that talks about user ID. It's just difficult, in light of all of that, to say that that clause requires that the computer be identified. Then there's a separate argument that they advance, which is, well, even if that's not true, the identifier has to be provided by the server. And that, we submit, has no basis in the claim language because there's nothing in the claim that says anything about where the identifier comes from. And therefore, it leaves open, especially under the broadest reasonable interpretation standard, the interpretation that it's applied in other ways.  Thank you, Your Honor. Mr. Foreman, you have up to five minutes to respond for the Patent Office on the motion to amend. Thank you. I may please the Court. When filing a motion to amend, the patent owner bears the burden of showing that it's entitled to its requested relief. Two of the requirements necessary for meeting that burden, the patent owner must offer claim construction for newly added claim terms. The patent owner must demonstrate written description support for the amended claims. BE does not challenge... Is claim construction necessary always? Well... Sometimes you don't need claim construction. Claim construction informs the patentability analysis, so the patent owner bears the burden of showing the patentability of the amended claim terms, and part of that process is defining the scope of the claim terms so that the claims can be compared to the prior art. But wouldn't you agree that there are some instances where the claim terms are so plainly clear on their face that the stated requirement of doing a claim construction is sort of form over substance in instances like that? Sure. I agree that there could be circumstances where the claim language is clear enough on its face that no construction is really needed and construction may just confuse things. This is certainly not one of those situations where we're introducing language, claim language, for the first time. What was it that was mysterious about this claim language? It seems to be just saying you're making these advertising selections, and doing it in real time based on what the viewer, what the user happens to be looking at, what the viewer happens to be browsing through. That seems pretty straightforward, right? Well, if the claim language had just said selecting content in accordance with real-time information, maybe that would be a situation where the claim would be readily understandable. Still, the issue is what's the scope of real-time? How much time is real-time? The problem here is that you're selecting advertising content in accordance with three things, real-time information, other computer usage information, and demographic information. So there's no discussion about how real-time information differs from those other types of information, how a selection is done when you have those three types of information, how things are prioritized, how a selection is made, ranking those types of information. There needs to be some more explanation. How about written description? Written description. That would seem to be more important, wouldn't it? Yes. Here, the patent owner just provided the board with a number of page and line citations with no explanation of how those citations support the newly amended claim. The regulation doesn't require that kind of full explanation, does it? Well, the regulation just says that you have to demonstrate written description support, and that's not something new to an IPR proceeding and lots of other proceedings. Before a patent office and district court, parties have to show written description support, and we don't believe that it's sufficient to just hand the board a number of page and line citations and basically tell the board to go figure out on its own. Would that be sufficient? It would never be sufficient in any circumstance, or maybe more in circumstances where those citations are lengthy and maybe none of them alone provides the support. But could you imagine situations where maybe there's only just one or two sites provided and it's pretty darn clear that there's support? Yeah. I mean, the case, the international flavors case that BE relies on is one of those circumstances where the patent owner just provided some brief citations to a small number of paragraphs in the specification, and the board found that sufficient. So written description is a very factual issue, and it's really going to depend on how complex the invention is. It's going to depend on how extensive the claim amendments are. I mean, there are certainly situations where you could add... They do appear in the specification. But, you know, and now BE tries to point to passages in the specification in their brief to explain how this real-time information limitation is described in the specification, but they didn't do any of that. I mean, it's really too little, too late. They didn't do any of that for the board, and the board was kind of at a loss because BE just almost like putting all these puzzle pieces on the table and not putting the puzzle together. And so if BE had provided that description to the board, maybe the board would have found that sufficient. Could they have? I don't recall whether they filed a petition for rehearing here. Did they, or could they have done so on this issue? I don't believe they filed a petition for a hearing before the board. This is really, you know, this was a very plainly stated, clear requirement that they knew about beforehand. So, you know, they had their one shot. I don't think they met the requirement, and I don't see why the board would have to reconsider that afterwards. Thank you, Mr. Foreman. Mr. Freitas has some rebuttal time. Thank you, Your Honor. Can you point out where the words real-time appear in the specification? Since it's key to one of your issues, I would think it would be handy. It's in the abstract, Your Honor. It's on column 3, line 30. As a matter of fact, there on column 3, line 30, real-time is used with specific reference to what the user's doing. There's a couple of other places where it appears. With respect to the point about the unique identifier, I have four things to say. First of all, we maintain that from the computer, those are words of limitation. They must be accounted for. Mr. Pincus said that they're simply a pathway identifier. I'm a little confused because the site you just gave says does not provide real-time. That was a discussion of the Phillip reference, Your Honor. So it said under Phillip, all you do is you get previously loaded ads in the queue, in the order they were put in the queue. So Phillip does not provide real-time. I understand. Where is it described that your invention actually provides real-time? Column 6, line 3, with reference to the category identifiers. The category identifiers, for example, business, sports, gardening, whatever it might be, the categories then allow real-time targeting. Because when the user's engaged in a review of one of those kinds of things, by use of the category identifier, real-time is achieved. So what about the notion of using real-time and other computer usage information and demographic information all together and synthesize all that to then select and transmit an advertisement? The answer there, Your Honor, is that the claim language is broad. It doesn't claim any specific way of doing that, any formula of doing it. It simply says in accordance with. So it's broad claim language, not requiring further limitation or further written description support. And each of those things is mentioned in the specification, much of it in original Claim 11, which made reference to, of course, demographic information. And while targeting in original Claim 11 isn't done with computer usage information, it's clearly collected and associated. So it's all there, and the proposed claim language doesn't require any further refinement. Judge Stoll, there's a couple of other references in column 16. There's a reference, line 25, the reactive targeting provided by Client Software Application 10 is handled in real-time rather than as simply building a library. And there's another reference lower in column 16. But we maintain that from the computer, those are words of limitation. And Mr. Pincus also said that there are references to a user ID, that the ID can be associated with the user. We don't dispute that, but the claim language requires that it identify what's sent from the computer. On Claim 16, Mr. Pincus said it's the same term. It's not. It does not say said unique identifier. It says providing a unique identifier to the users. It does not say said unique identifier. Counsel, my role here is to be a unique identifier when your time is up. And it is up, so we will take the case under advisement. Thank you, Your Honor.